**BOARD OF EDUCATION OF CALLOWAY COUNTY, Kentucky, Appellant,**

v.

**INDEPENDENT BOARD OF EDUCATION OF MURRAY, Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 4, 1984.

Rehearing Denied June 29, 1984.

Discretionary Review Denied by Supreme Court Jan. 9, 1985.

Ben B. Fowler, Stites & Harbison, Frankfort, Donald A. Jones, Murray, for appellant.

William Donald Overbey, Overbey & Overbey, Murray, for appellee.

Before REYNOLDS and WILHOIT, JJ., and B.R. PAXTON, Special Judge *.

WILHOIT, Judge.

·This appeal arises from a judgment of the Calloway Circuit Court declaring that the appellee, the Independent Board of Education of Murray, has the statutory right to levy and receive all utility gross receipts taxes generated within its own district without any claim by the appellant, the Board of Education of Calloway County.

The issue is whether KRS 160.593 and 160.-644 allow the appellee to act as a separate taxing district if it had previously joined with another school district in levying the taxes on a county-wide basis. We affirm.

In 1969, the appellant and the appellee agreed to jointly request the Calloway County Fiscal Court to levy a utility tax pursuant to KRS 160.613 and 160.593. Beginning on August 15, 1969, the tax was collected from each affected utility and distributed to each school district on the basis of average daily attendance pursuant to KRS 160.644. The parties continued to tax jointly and to have the tax distributed on the basis of average daily attendance until May 1982, when the appellee wrote a letter to all interested utilities demanding each to pay the tax directly to it.

The appellee apparently took this action in response to the appellant's attempt, in August 1981, to modify the parties' exchange of average daily attendance credit for the nonresident students attending the other's school district. Instead of allowing the appellee all the Public School Foundation Program monies available for the students in the appellant's district who attended the appellee's schools, the appellant wanted the appellee to return one-half of the funds to it.

In response to the appellee's letter, the appellant petitioned the Calloway Circuit Court for a declaration of rights. Several utility companies intervened for the purpose of paying the proceeds into court. The court held that by virtue of a 1976 amendment to KRS 160.593 the appellee has the right to declare itself to be a separate taxing district for the levying of the utility tax and to collect the proceeds for use in that district.

The appellant contends the appellee cannot become a separate taxing district because it had joined with the appellant prior to 1974 to levy taxes on a county-wide basis. The appellant maintains that the 1974 amendments to KRS 160.593 and 160.-

---

* Special Judge Paxton, a former Judge of this Court, sits by assignment of the Chief Justice

pursuant to Section 110(5)(b) of the Constitution of the Commonwealth.

644 made it mandatory that those districts that had previously combined to collect taxes on a county-wide basis continue to do so jointly. The appellant argues further that the 1976 amendment to KRS 160.593 deleting the mandatory language had no effect on this requirement because no change was made in KRS 160.644. We disagree.

The issue before us arises out of a set of often-amended statutes. To ascertain the rights of the parties, it is helpful to trace at least a part of the statutory history regarding the utility gross receipts tax for school districts. In 1966, the General Assembly enacted into law provisions codified as KRS 160.593, 160.613, and 160.644. *See* 1966 Ky.Acts ch. 24, pt. III, §§ 1, 9, & 21. KRS 160.593, which is of primary importance in resolving the issue before us, as enacted in 1966, read as follows:

> One or more boards of education of school districts which contain at least ninety per cent (90%) of the county's inhabitants may, after compliance with the public hearing requirement contained in KRS 160.603, request the fiscal court to levy one of the school taxes authorized by KRS 160.593 to 160.597, 160.601 to 160.627, 160.633 to 160.648. The fiscal court shall levy, within fifteen (15) days of such request, the school tax at the rate requested.

KRS 160.644, as enacted in 1966, read:

> The school taxes and penalties collected under KRS 160.593 to 160.597, 160.601 to 160.627, 160.633 to 160.648 shall be distributed to the treasurer of the board of education of each school district in the county in proportion to the number of pupils in average daily attendance in each district as shown by the final certification by the superintendent of public instruction for the previous school year pursuant to provisions of KRS 157.310 to 157.440.

Together these statutes allowed only the county-wide collection of taxes with the monies distributed among the county's schools on the basis of average daily attendance. The school district, then, with the most students received the largest share of the tax money regardless of whether that district had the largest population of taxpayers. In 1974, however, these statutes were amended. *See* 1974 Ky.Acts ch. 125, §§ 1 & 4; ch. 308, § 35.

KRS 160.593 (emphasis added), as amended in 1974, read:

> (1) *Any* board of education of a school district may, after compliance with the public hearing requirement contained in KRS 160.603, request the fiscal court to levy one (1) of the school taxes authorized by KRS 160.593 to 160.597, 160.601 to 160.633, 160.635 to 160.648. The fiscal court shall levy, within fifteen (15) days of such request, the school tax at the rate requested and the levy shall take effect not less than thirty (30) days nor more than ninety (90) days after the passage of the order or resolution. *The imposition of any tax levied under the provisions of KRS 160.593 to 160.597, 160.601 to 160.633, and 160.635 to 160.648 shall be limited to the territory of the school district or districts requesting the levy. In those counties where one (1) of the taxes referred to by this section is in effect county-wide on June 21, 1974, the taxes shall continue to be levied on a county-wide basis.* Revenue produced by such taxes shall be distributed on the basis of average daily attendance, as set forth in KRS 160.644, to those districts levying such taxes.
>
> (2) Two or more boards of education within a county may make a joint request for the tax to be levied in their respective districts.

KRS 160.644 (emphasis added) was amended to read:

> The school taxes and penalties collected under KRS 160.593 to 160.597, 160.601 to 160.633, 160.635 to 160.648 shall be distributed to the treasurer of the board of education of the school district. *In the event that more than one board of education within the county is participating in one of these tax levies, the funds collected shall be distributed in proportion to the tax rate levied and the number of pupils in average daily attend-*

*ance in the participating districts as shown by the final certification by the Superintendent of Public Instruction for the previous school year pursuant to the provisions of KRS 157.310 to 157.-440.*

These amendments allowed the levying of utility taxes on a district-by-district basis rather than the county-wide levy required previously. Those counties, however, which had previously levied the taxes on a county-wide basis were required to continue their combined activities. Moreover, individual districts were also permitted to join together to levy the taxes. The amendment to KRS 160.644 provided that in this latter instance and when the districts had previously joined together, the tax monies were to be distributed in proportion to the district's average daily attendance.

In 1976, KRS 160.593 was further amended. *See* 1976 Ky.Acts ch. 127, § 8. Taken out of subsection (1) was any reference to the situation where taxes had been levied county-wide and the requirement that such taxes continue to be levied on a county-wide basis. Subsection (1) (emphasis added) now reads:

> Any board of education of a school district may, after compliance with the public hearing requirement contained in KRS 160.603, levy one (1) of the school taxes authorized by KRS 160.593 to 160.597, 160.601 to 160.633, 160.635 to 160.648. *The imposition of any tax levied under the provisions of KRS 160.593 to 160.-597, 160.601 to 160.633 and 160.635 to 160.648 shall be limited to the territory of the school district except as provided in subsection (2) of this section.*

KRS 160.644 has not been further amended.

▉ As presently worded, KRS 160.593 and 160.644 clearly do not prohibit an individual school district from unilaterally levying a utility tax on the territory within its school district. Moreover, the Legislature obviously intended this practice to be the rule rather than the exception. A school district may, however, join with other districts to levy the tax and share the monies in direct proportion to their average daily attendance. Likewise, nothing in these statutes literally precludes a school district that had agreed with another district or districts to levy taxes from rescinding that agreement and levying the taxes unilaterally. The only basis for the appellant's argument that the appellee cannot cease its combined levy of the tax and the tax individually is the legislative history discussed above.

The appellant argues that the history is important because the 1974 amendments of KRS 160.644 and 160.593 mandate in identical terms that districts participating in the tax prior to 1974 continue their combined participation. It maintains that the deletion of this language, then, in the 1976 amendment of KRS 160.593 would not affect the Legislature's intention to have those school districts which had previously collected taxes on a county-wide basis to continue to do so. The problem, of course, is that the words "[i]n the event that more than one board of education within the county is participating in one of these tax levies, the funds collected shall be distributed in proportion to the rate levied and the number of pupils in average daily attendance" cannot be fairly read to say "[i]n those counties where one (1) of the taxes referred to by this section is in effect county-wide on June 21, 1974, the taxes shall continue to be levied on a county-wide basis." Moreover, reading KRS 160.644 in the context of the other statutes governing the collection and distribution of the utility tax, the 1974 amendment simply provided, and continues to provide, the methodology for the distribution of the monies collected. If, as obviously preferred by the 1976 Legislature, the tax is levied by an individual school district, all the money goes to that school board. If the tax is levied by multiple districts in combination, the money is distributed proportionately. This alternative methodology was necessitated by the 1974 amendment of KRS 160.593 regardless of that statute's language requiring

school districts acting in concert prior to 1974 to maintain the status quo.

█ In summary, we find nothing in the present statutes which specifically prohibits the appellee from severing its utility tax relationship with the appellant. On the contrary, the clearly-expressed public policy now is that each school district may levy its own utility tax without regard to any other district within the county. Likewise, we find nothing in the statutes when viewed from an historical perspective which indicates a present legislative intent that a joint taxing relationship once begun must continue in perpetuity against the will of one of the taxing entities.

The judgment of the Calloway Circuit Court is affirmed.

All concur.